32IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| EVERINGHAM & KERR, INC., | : | |
| | : | Docket No.: |
| Plaintiff, | : | |
| | : | **COMPLAINT** |
| v. | : | |
| | : | |
| HAROLD CASWELL, LYNNE CASWELL, | : | |
| CASWELL HOLDING CO., INC., AND | : | |
| HARRY CASWELL, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |

Plaintiff Everingham and Kerr, Inc. ("E&K"), by way of complaint against defendants Harold Caswell, Lynne Caswell, Caswell Holding Co., Inc., and Harry Caswell, Inc., (collectively, the "Defendants"), states:

## THE PARTIES

1.      E&K is a New Jersey corporation with a principal place of business of 156 High Street, Mullica Hill, New Jersey 08062.

2.      Defendant Harold R. "Harry" Caswell is an individual who resides at 37765 Bay Harbor Circle, Rehoboth Beach, Delaware 19971.

3.      Defendant Lynne Caswell is an individual who resides at 37765 Bay Harbor Circle, Rehoboth Beach, Delaware 19971.

4.      Defendant Caswell Holding Co., Inc. is a Delaware Corporation with a principal place of business of 32645 Long Neck Road, Millsboro, Delaware, 19966.

5.      Defendant Harry Caswell Inc. is a Delaware Corporation with a principal place of business of 32645 Long Neck Road, Millsboro, Delaware, 19966.

1

6. At all relevant times, defendants Harold Caswell and Lynne Caswell operated a plumbing, heating and air conditioning business through Harry Caswell Inc. and Caswell Holding Co., Inc. (the "Company") .

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, as there is complete diversity between the parties, and the amount in controversy is more than $75,000.

8. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1) as all Defendants reside in this district and is also appropriate pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this claim occurred in this district.

## FACTUAL BACKGROUND

9. At all relevant times, the Company provided its customers with plumbing, mechanical, and utility contracting services.

10. On information and belief, Caswell Holding Co. Inc., is the sole shareholder of Harry Caswell, Inc.

11. At all relevant times, defendants Harold Caswell and Lynne Caswell were the sole shareholders of Caswell Holding Co., Inc.

12. At all relevant times, Harold Caswell was the President and C.E.O. of Harry Caswell, Inc.

13. E&K is an advisory firm that specializes in providing intermediary services, such as merger, acquisition, divestiture, valuation, and corporate transactional consulting, for middle market companies, owners, and entrepreneurs.

14. In 2021 and 2022, Defendants contemplated a corporate sale, merger, or restructuring of the Company.

15.     At or around the same time, the Defendants sought the services of E&K to assist in facilitating and providing consultation regarding any potential sale, merger, or corporate restructuring.

## THE CONTRACT

16.     On January 17, 2022, the Defendants (collectively defined in the contract as the "Client") executed a contract (the "Contract") with E&K (defined in the Contract as "Consultant").  A true copy of the Contract is attached as Exhibit A.

17.     The Contract states in part:

> The Client agrees to retain Consultant as intermediary and exclusive representative in connection with (i) the sale of the Client's stock or assets of the Company including an investment in the Company, the entering into a strategic alliance, licensing agreement, royalty agreement, joint venture or any other non-prior existing business relationship and may also be in the form of a merger, a refunding, a recapitalization or other corporate restructuring to any person or entity, including existing partners or shareholders, their heirs or assigns and employees or to an employee stock ownership plan and (ii) if connected to the sale of the Company and if commonly-owned, the sale or lease of the facilities *(the "Facilities"); collectively (the "Transaction ").*

18.     The Contract provides that the Contract would remain in force for an initial term of twelve months from the date of execution with automatic six-month renewals to allow for the completion of a Transaction as defined in the Contract.

19.     The Defendants agreed to pay and did pay to E&K an engagement fee of $15,000 (the "Engagement Fee").

20.     The Defendants agreed to pay E&K a "Success Fee" under the following circumstances:

    a.   "In the event that a Transaction is consummated during the term of this agreement;" or

b. If a Transaction is consummated "within twenty-four (24) months of the termination of this agreement to any buyer who was contacted by the Consultant and/or any existing partners or shareholders […] or to any parties that the Client excluded the Consultant from contacting[.]"

21.    The Defendants agreed that the amount of the Success Fee was to be computed as follows:

$100,000 plus 3% of the Total Consideration for the Company and/or for the sale or the lease of the Facilities. This fee will be applicable to all forms of Transactions. Also, if the sale of the Company is divided into multiple business units, and separate Transactions are consummated with different Buyers, the Success Fee shall be calculated separately for each Transaction. The Engagement Fee will be credited towards the Success Fee.

22.    The Contract defined "Total Consideration" to mean:

[A]ll value paid (whether in the form of cash or notes) or exchanged by the Buyer in connection with the investment in or acquisition of control (or any part thereof or interest therein) of the Company and/or the sale or lease of the Facilities. Total Consideration shall include, but not be limited to non-competes, assumed liabilities, employment and/or consulting agreements in excess of fair market rates, assets retained by the Client (including, but not limited to nom1al course of business working capital, accounts receivable and inventory) or any other non-contingent acquisition payment mechanisms, agreed between the Buyer and Client. It is agreed that, if an earnout, royalty, licensing or other contingent payment method is part of the Transaction; Consultant will receive the Success Fee applicable to this portion of the purchase price as such contingent payment is earned and paid. The non-contingent portion of the Success Fee shall be calculated as of, and paid at the time of closing of the Transaction.

23.    Each Defendant agreed to the obligation of paying the Success Fee.

24.    The Defendants agreed to pay interest in the amount of twelve percent per year on any amount of money due and unpaid to E&K under the terms of the Contract.

25.    The Defendants also agreed to pay reasonable attorney's fees and costs if they failed to pay all sums due to E&K under the terms of the Contract and E&K filed a lawsuit to collect the amount due.

26.     E&K performed under the Contract by marketing the Company to its contacts, entering into non-disclosure agreements with numerous potential purchasers, entering into direct negotiations with several potential purchasers, and conveying multiple good faith offers to the Defendants.

27.     As part of its performance, on or about October 26, 2022, E&K sent out an email campaign to, among numerous others, the following individuals, all of whom are owners, officers, or employees of George & Lynch, Inc.:

     a.  Chris Baker, C.E.O. of George & Lynch, Inc.

     b.  Leonard Brooks

     c.  David McGuigan

     d.  William Robinson

28.     George & Lynch Inc. is a Delaware corporation with a principal place of business of 150 Lafferty Lane, Dover, Delaware 19901.

29.     The Defendants also requested that E&K not contact any "local" business owners.

30.     On January 21, 2023, Lynne Caswell informed E&K that the Defendants were electing to terminate the Contract, falsely claiming on behalf of all Defendants that "It has become clear to us that we are not ready to sell the business."

31.     Given that Defendants failed to give notice of termination more than 30 days before the end of the initial one-year term, the Contract term ended July 17, 2023, eighteen months after the execution of the Contract.

**THE ACQUISITION**

32.     In or about September of 2024, within the twenty-four-month period following the end of the term of the Contract, George & Lynch Inc. acquired the Company, in whole or in part (the "Acquisition").

33.     On information and belief, a Total Consideration was paid to one or all of the Defendants in connection with the Acquisition.

34.     After the consummation of the Acquisition, despite demand, Defendants failed to pay E&K the Success Fee.

**E&K'S ATTEMPTS TO AVOID LITIGATION AND MINIMIZE COST**

35.     On October 30, 2024, in an attempt to minimize litigation costs for which Defendants would eventually be responsible, E&K sent a detailed letter to counsel to the Defendants.  A true copy of the October 30, 2024, Letter is attached as Exhibit B.

36.     Defendants offered no response, simply ignoring the letter and leaving E&K with no choice but to initiate this lawsuit.

**COUNT I**
*Breach of Contract Against All Defendants*

37.     E&K incorporates by reference all preceding paragraphs of this Complaint.

38.     E&K entered into the Contract with the Defendants, under the terms of which each and all Defendants agreed to pay E&K a Success Fee to be computed in accord with the Contract.

39.     E&K fully performed its obligations under the terms of the Contract.

40.     Defendants failed to perform their obligations under the Contract.

41.     Defendants breached the Contract by not paying E&K the Success Fee.

42.     Despite demands for payment of the Success Fee, Defendants have failed to cure the breach of the Contract by paying the amount owed to E&K.

43.     As a result of Defendants' actions and inactions, E&K has suffered compensatory damages.

**WHEREFORE**, E&K requests that this Court enter judgment against the defendants, jointly and severally, as follows:

a.     Awarding E&K compensatory damages;

b.     Awarding E&K interest on all sums of money due under the Contract at a rate of 12% per year since the date of the Acquisition;

c.     Awarding E&K costs of suit and all reasonable attorney's fees under the terms of the Contract in an amount to be determined by application of counsel after the entry of judgment in this matter; and

d.     Awarding such other and further relief as the Court determines is just and equitable.

Dated:  January __2__ , 2025                    _Megan Davies_

                                                Megan J. Davies, Esquire
                                                (Del. Bar No. 006777)
                                                **LAW OFFICE OF MEGAN J. DAVIES**
                                                716 N. Tatnall Street
                                                Wilmington, DE 19801
                                                (856) 671-1188
                                                mjd@mjdavieslaw.com
                                                Attorney for Everingham & Kerr, Inc.

Of Counsel:

**EARP COHN P.C.**
Edward F. Borden, Jr.
Charles P. Montgomery
20 Brace Road, 4th Floor
Cherry Hill, NJ 08034
(856) 354-7700
(856) 385-7060 direct facsimile

*Pro Hac Vice Application Forthcoming*